UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #: _____              │
│ DATE FILED: 6/26/2026                │
└─────────────────────────────────────┘
```

ROBERT A. GRIFFIN,

                              Plaintiff,

        -against-

DANIEL MARTUSCELLO III, *et al*.,

                              Defendants.

No. 23-CV-9810 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

*Pro se* Plaintiff Robert A. Griffin ("Plaintiff") brings this action pursuant to 42 U.S.C. § 1983 against Defendants Correctional Officer J. W. York; Sergeant J. Mandel; Captain C. Nixon; Commissioner Daniel F. Martuscello III; Correctional and Diet Officer Michelle Oscar; and Correctional Officer Kristin Bailey (collectively, "Defendants") alleging violations of the Fourteenth and Eighth Amendments arising from a Tier I disciplinary proceeding.

Plaintiff alleges that Defendants falsely accused him of violating his medically prescribed dietary restrictions, denied him a fair disciplinary hearing, and improperly upheld the resulting disciplinary determination on administrative appeal. Plaintiff further alleges that, as a result of the disciplinary determination, he was sanctioned with the loss of 13 days of package and commissary privileges, thereby violating his rights under the Fourteenth and Eighth Amendments. Pending before the Court is Defendants' Motion to Dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6).[1] (ECF No. 42.)

For the following reasons, Defendants' Motion to Dismiss is GRANTED in its entirety.

---

[1] The Court refers to the parties' motion papers as follows: (1) ECF No. 44 ("Defs.' Mem."); and (2) ECF No. 46 ("Pl. Opp."). Defendants did not file a reply memorandum in further support of their Motion to Dismiss.

**BACKGROUND**

As written, the Complaint is limited in its recitation of factual allegations. With that said, the following background is drawn from the Complaint, and the Court accepts the allegations as true and draws all reasonable inferences in Plaintiff's favor.[2] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff Robert A. Griffin is currently an incarcerated individual at Sing Sing Correctional Facility (the "Facility") in Ossining, New York. (Compl. at 2.) For reasons not explained in the Complaint, Plaintiff appears to be on a restricted diet. (*Id*.) What Plaintiff is permitted to consume is listed in a "diet book" that was prescribed by the Facility's medical department. (*Id*.) Plaintiff has also been instructed not to consume what is being served in the Facility's mess hall, which the Court assumes does not provide food items in accordance with Plaintiff's dietary restrictions. (*Id*.)

Against that backdrop, on October 26, 2022, Plaintiff alleges that Correctional Officer ("C.O.") "J. W. York" reported that Plaintiff was on the regular serving line. (*Id*.) As a result, C.O. York issued Plaintiff a "misbehavior ticket," which was endorsed by Correctional and Diet Officer Michelle Oscar and C.O. Kristin Bailey, the mess hall serving officer. (*Id*. at 3.)

Shortly thereafter, on October 29, 2022, Plaintiff was notified that he was scheduled for a Tier I disciplinary proceeding concerning the misbehavior report. (*Id*. at 2.) Plaintiff alleges that, when he appeared before Sergeant "J. Mandel," the Tier I Hearing Officer, he was informed that he had been found guilty. (*Id*. at 3.) Plaintiff alleges that he was unaware that C.O. York had issued a misbehavior report, and that he was denied the opportunity to contest it. (*Id*.) Plaintiff nonetheless informed Sergeant Mandel that he was not on the regular serving line and alleged that

---

[2] For reasons unknown to the Court, the first page of the Complaint is numbered as Page 2. (Compl. at 1.) The Court further notes that the Complaint contains multiple pages designated as "Exhibit A." (*Id*. at 9, 36.) To avoid confusion, the Court cites only to the ECF-generated PDF page numbers of the Complaint rather than the page numbers appearing on the underlying document.

C.O. York submitted a false misbehavior report. (*Id*.) According to Plaintiff, Sergeant Mandel dismissed Plaintiff's defenses, stating that he believed C.O. York because "he has know[n] him for years." (*Id*.) As a result, Plaintiff was sanctioned with the loss of 13 days of package and commissary privileges. (*Id*.)

On November 2, 2022, Plaintiff appealed Sergeant Mandel's decision. (*Id*. at 13–16, 19.) On that same date, Captain "C. Nixon" denied Plaintiff's appeal for several reasons, including that the charges were "consistent with the allegations presented in the misbehavior report," that the "disposition was fair and appropriate," and that the appeal was untimely.[3] (*Id*. at 19.) On November 9, 2022, Plaintiff filed a subsequent appeal to the Inmate Grievance Program ("IGP"). (*Id*. at 29.) Although the timeline is unclear, the IGP appeared to hold a hearing concerning Plaintiff's appeal on December 29, 2022, where it recommended that "all hearing officers [are] reminded to adhere to the Policy and Procedure regarding Tier hearings." (*Id*. at 30.) Plaintiff thereafter appealed to the Superintendent of the Facility, Michael Capra, on January 6, 2023. (*Id*.) Superintendent Capra, however, denied Plaintiff's appeal. (*Id*. at 31.) Plaintiff subsequently appealed to the Central Office Review Committee ("CORC") on June 26, 2023. (*Id*.) Despite Plaintiff following up with CORC on July 8, 2023, he alleges that he has not received a decision concerning his appeal. (*Id*. at 4.)

Based on the foregoing, Plaintiff alleges that Defendants improperly charged him with a disciplinary violation, denied him a fair disciplinary hearing, and upheld the resulting determination on appeal. (*Id*.) Plaintiff further alleges that these actions deprived him of

---

[3] The Court acknowledges that Plaintiff dated his appeal to Captain Nixon on October 29, 2022. (Compl. at 16.) Captain Nixon's decision, however, indicates that Plaintiff submitted his appeal on November 2, 2022. (*Id*. at 19.) The Court need not resolve this discrepancy because it has no bearing on the disposition of the instant motion.

procedural due process and resulted in the loss of package and commissary privileges and emotional distress.  (*Id.*)

## PROCEDURAL HISTORY

Plaintiff commenced this action on November 3, 2023.  (ECF No. 1.)  Following two unsuccessful attempts to effectuate service, (ECF Nos. 26–27), Defendants moved to dismiss the Complaint on January 15, 2025.[4]  (ECF No. 23.)  The Court waived the pre-motion conference and set a briefing schedule.  (ECF No. 25.)  Defendants served their opening papers on July 25, 2025.  (ECF Nos. 42–45.)  The Court received Plaintiff's opposition papers on September 9, 2025.  (ECF No. 46.)  Defendants elected not to file a reply.

## LEGAL STANDARD

### I.    Federal Rule of Civil Procedure 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction . . . when the district court lacks the statutory or constitutional power to adjudicate it."  *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011) (citation and internal quotations omitted).  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."  *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).  In assessing whether there is subject matter jurisdiction, the district court must accept as true all material facts alleged in the complaint.  *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009).  Without jurisdiction, the district court is devoid of the "power to adjudicate the merits of the case," and therefore must decide a motion under Federal Rule of Civil Procedure 12(b)(1) before

---

[4] Defendants contend that Officers Oscar and Bailey were not properly served prior to Defendants serving Plaintiff with their opening motion to dismiss papers.  (Defs.' Mem. at 7.)  Because Plaintiff's claims fail as a matter of law, as discussed below, and in light of Plaintiff's *pro se* status, the Court need not determine whether service was properly effectuated as to Officers Oscar and Bailey.

addressing any motion on the merits. *Carter v. HealthPort Tech., LLC*, 822 F.3d 47, 55 (2d Cir. 2016).

## II.    Federal Rule of Civil Procedure 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. While the district court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, it is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555).

The Second Circuit "deem[s] a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference . . . and documents that plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rotham v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (internal citations omitted). The critical inquiry is whether a plaintiff has pled sufficient facts to nudge their claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A motion to dismiss will be denied where the allegations "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Where a *pro se* plaintiff is concerned, district courts must construe the pleadings in a particularly liberal fashion. *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). In fact, district courts must interpret the *pro se* plaintiff's pleading "to raise the strongest arguments that [it] suggest[s]."

*Harris v. City of New York*, 607 F.3d 18, 24 (2d Cir. 2010) (internal quotations and citation omitted). Nevertheless, a *pro se* plaintiff's pleadings must contain factual allegations that sufficiently "raise a right to relief above the speculative level," *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010), and the district court's duty to construe the complaint liberally is not "the equivalent of a duty to re-write it," *Geldzahler v. N.Y. Med. College*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009).

## III.    Section 1983 Claims

"Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Okla. City v. Tuttle*, 471 U.S. 808, 816 (1985)).  "To state a claim under Section 1983, a plaintiff must allege facts indicating that some official action has caused the plaintiff to be deprived of his or her constitutional rights." *Zherka v. Amicone*, 634 F.3d 642, 644 (2d Cir. 2011) (citing *Colombo v. O'Connell*, 310 F.3d 115, 117 (2d Cir. 2002) (per curiam)); *see also Ross v. Westchester Cnty. Jail*, 2012 WL 86467, at *9 (S.D.N.Y. Jan. 11, 2012).  A defendant's conduct must therefore be a proximate cause of the claimed violation in order to find that the individual defendant deprived the plaintiff of his constitutional rights. *Ross*, 2012 WL 86467, at *9 (citing *Martinez v. California*, 444 U.S. 277, 285 (1980)).  Additionally, a plaintiff seeking monetary damages against the defendant must show personal involvement on the part of the defendant in the alleged constitutional deprivation as a prerequisite to recovery under § 1983. *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010) (citing *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006)).

**DISCUSSION**

6

As a threshold matter, the Court addresses whether Plaintiff's potential official capacity claims are barred by the Eleventh Amendment.[5]  Defendants otherwise assert several arguments warranting dismissal of the Complaint: (1) Plaintiff fails to allege Commissioner Martuscello's personal involvement in the alleged constitutional violations; (2) Plaintiff fails to state a procedural due process claim under the Fourteenth Amendment; and (3) Plaintiff fails to state a claim for cruel and unusual punishment under the Eighth Amendment.  (*See generally* Defs.' Mem.)  The Court addresses these arguments in turn.

## I.    Threshold Matters

### A.  Sovereign Immunity and Official Capacity Claims

At the outset, the Court must determine whether Plaintiff's potential official capacity claims for declaratory relief, compensatory damages, and punitive damages are barred by the Eleventh Amendment.

Absent abrogation by Congress, a state is immune from suit in federal court.  *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54–56 (1996); *see also Dube v. State Univ. of New York*, 900 F.2d 587, 594 (2d Cir. 1990).  This immunity extends to "arms of the state," which includes "officers employed by agencies such as DOCCS."  *See Peck v. Annucci*, 2025 WL 3022454, at *7 (S.D.N.Y. Oct. 29, 2025) (dismissing § 1983 claims seeking monetary damages against DOCCS personnel in their official capacities under the Eleventh Amendment); *Williams v. Annucci*, 2018 WL 3148362, at *10 (S.D.N.Y. June 27, 2018) (dismissing § 1983 claims seeking monetary damages against DOCCS Commissioner in his official capacity because they "cannot stand" in light of sovereign immunity); *Matteo v. Perez*, 2017 WL 4217142, at *7 (S.D.N.Y. Sept. 19, 2017)

---

[5] The Complaint does not specify whether Plaintiff brings claims against Defendants in their official or individual capacities.  (*See generally* Compl.)  Nor do Defendants address this issue in their motion papers.  (*See generally* Defs.' Mem.)  Because Plaintiff is a *pro se* litigant, the Court, in an abundance of caution, considers whether Plaintiff plausibly states a claim under either theory.

(dismissing § 1983 claims against DOCCS official because of Eleventh Amendment). In other words, "[t]he immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents . . . that are, effectively, arms of a state." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009); *see also Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (a suit against a state official in their official capacity is "not a suit against the official but rather is a suit against the official's office").

In the context of § 1983, claims against state officers in their official capacities must be dismissed because such officials are not considered "person[s]" within the meaning of the statute. *See Reynolds v. Barrett*, 685 F.3d 193, 204 (2d Cir. 2012); *see also Koehl v. Dalsheim*, 85 F.3d 86, 88–89 (2d Cir. 1996) (affirming dismissal of § 1983 claims against DOCCS superintendent in official capacity). A limited exception exists, however. State officials may be sued in their official capacities where the "complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *See Virginia Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 254–56 (2011) (citing *Verizon Md. Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002); *Ex parte Young*, 209 U.S. 123, 159–160 (1908)); *see also Mary Jo C. v. N.Y. State & Local Ret. Sys.*, 707 F.3d 144, 152 (2d Cir. 2013), *cert. dismissed*, 569 U.S. 1040 (2013); *KM Enterprises, Inc. v. McDonald*, 518 Fed. Appx. 12, 13 (2d Cir. 2013). This exception does not apply when a plaintiff seeks money damages. *See Exxon Mobil Corp. v. Healey*, 28 F.4th 383, 392 (2d Cir. 2022) ("[T]he Eleventh Amendment bars the award of money damages against state officials in their official capacities.")

Plaintiff seeks various forms of relief, including declaratory relief and monetary damages, based on Defendants' alleged constitutional violations. (Compl. at 6.) However, Defendants were employed by DOCCS during the events giving rise to this action and are therefore "effectively,

arms of [the] state." *Gollomp*, 568 F.3d at 366.  Plaintiff is consequently barred from pursuing damages against them in their official capacities. *See Pineda v. Doe 1-2*, 2025 WL 2145661, at *3 (S.D.N.Y. July 29, 2025) ("The Eleventh Amendment therefore precludes Plaintiff's claims for damages under Section 1983 against the individual defendants, in their official capacities, as officers of the State of New York.")  As explained above, "New York has not waived its Eleventh Amendment immunity to suit in federal court, and Congress did not abrogate the states' immunity in enacting Section 1983." *Javier v. Russo*, 2021 WL 4252061, at *5 (S.D.N.Y. Sept. 17, 2021) (citing *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977)); *see also Mamot v. Bd. of Regents*, 367 F. App'x. 191, 192 (2d Cir. 2010) ("It is well-established that New York has not consented to § 1983 suits in federal court, and that § 1983 was not intended to override a state's sovereign immunity.").  Nor does Plaintiff benefit from the exception for prospective relief, as the Complaint does not seek such relief. (Compl. at 6.)  Plaintiff's request for declaratory relief is likewise barred because "absent a request for prospective relief, the Eleventh Amendment bars declaratory relief in the form of a statement that Plaintiff's constitutional right has been violated in the past." *Mateo v. Westchester Cnty.*, 2020 WL 5802838, at *5 (S.D.N.Y. Sept. 29, 2020).  Indeed, the Complaint only challenges a completed Tier I disciplinary proceeding from October 2022. (Compl. at 2–4.)  Such relief is retrospective.

The Court therefore dismisses Plaintiff's claims against Defendants in their official capacities without prejudice for lack of subject matter jurisdiction.  This ruling does not affect Plaintiff's claims against Defendants in their individual capacities.

### B. Lack of Personal Involvement for Commissioner Martuscello

The Court next turns to Plaintiff's individual capacity claims and first considers whether Plaintiff has plausibly alleged Commissioner Martuscello's personal involvement in the asserted

constitutional violations.  Along these lines, Defendants argue that the Complaint fails to allege the personal involvement of Defendant Martuscello.  (Defs.' Mem. at 6.)  Plaintiff does not respond to this argument in his opposition papers.  (Pl. Opp. at 1.)

It is well settled that "a defendant in a § 1983 action may not be held liable . . . for constitutional violations merely because he held a high position of authority."  *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996); *see also Corbett v. Annucci*, 2018 WL 919832, at *6 (S.D.N.Y. Feb. 13, 2018) (same).  To the contrary, "a plaintiff must establish a given defendant's personal involvement in the claimed violation in order to hold that defendant liable in his individual capacity."  *Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir. 2016) (quoting *Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 229 (2d Cir. 2004)).  In the context of supervisory liability,  the Second Circuit has explained that "there is no special rule for supervisory liability.  Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'"  *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676).

Here, the Complaint is devoid of any factual allegations suggesting that Commissioner Martuscello was personally involved in Plaintiff's alleged denial of procedural due process.  (*See generally* Compl.)  Aside from listing Commissioner Martuscello's name in the caption and list of defendants, the Complaint contains no other allegations concerning him.  (*Id*. at 1–2.)  Plaintiff cannot maintain a § 1983 claim based solely on Commissioner Martuscello's high-ranking position within DOCCS.  *See Illescas v. Annucci*, 2022 WL 17539696, at *5 (S.D.N.Y. Dec. 7, 2022) (citing *Black*, 76 F.3d at 74); *Taylor v. Small*, 2026 WL 1346036, at *8 (S.D.N.Y. May 14, 2026); *Corbett*, 2018 WL 919832, at *6.

Nor can Plaintiff plausibly allege Commissioner Martuscello's personal involvement in the alleged constitutional violation merely because Plaintiff wrote him a letter detailing the Tier I disciplinary proceeding. Although the Complaint does not expressly allege that Plaintiff corresponded with Commissioner Martuscello, Plaintiff attaches a letter from Anne Marie McGrath, a Deputy Commissioner of DOCCS, that bears Commissioner Martuscello's letterhead. (Compl. at 34.) Construing the Complaint liberally, the Court assumes that Plaintiff may have written to Commissioner Martuscello regarding the issues underlying this action. As explained above, however, the writing of such a letter is not dispositive. *See Bonie v. Annucci*, 2023 WL 2711349, at *6 (S.D.N.Y. Mar. 30, 2023) (DOCCS Commissioner's "receipt of letters or grievances, by itself, does not amount to personal involvement"); *Sierra v. Doe 22*, 2024 WL 866866, at *4 (N.D.N.Y. Jan. 26, 2024) ("Defendant['s] alleged receipt of letters from Plaintiff's family members is insufficient to demonstrate Defendant['s] personal involvement in the alleged violation of Plaintiff's rights."), *report and recommendation adopted sub nom. Sierra v. Zerniak*, 2024 WL 865866 (N.D.N.Y. Feb. 28, 2024); *Mateo v. Fischer*, 682 F. Supp. 2d 423, 430 (S.D.N.Y. Feb. 8, 2010) ("[T]he receipt of letters or grievances, by itself, does not amount to personal involvement."); *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997) (affirming that DOCCS Commissioner was not personally involved simply because Plaintiff wrote to him).

Plaintiff has therefore not plausibly alleged Commissioner Martuscello's personal involvement in the alleged constitutional violations. As a result, Plaintiff's remaining § 1983 claims against Commissioner Martuscello must be dismissed.

## II.   Fourteenth Amendment: Procedural Due Process

The Court now addresses Plaintiff's procedural due process claims against the remaining Defendants. Defendants argue, among other things, that Plaintiff fails to allege the deprivation of

a protected liberty interest and therefore cannot state a procedural due process claim.  (Defs.' Mem. at 3–5, 7.)  Plaintiff's opposition papers do not address Defendants' argument.  (Pl. Opp. at 1.)

The Fourteenth Amendment provides, in relevant part, that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ."  U.S. Const. Amend. XIV § 1.  "In order for Plaintiff to state plausibly a claim for violation of his Fourteenth Amendment procedural due process rights, he must: (1) identify a protected liberty interest; and (2) identify the procedure that deprived him of that liberty interest."  *Marcus v. Annucci*, 2022 WL 280935, at *7 (S.D.N.Y. Jan. 31, 2022) (citing *Linares v. Annucci*, 2021 WL 2689736, at *7 (S.D.N.Y. June 30, 2021)).

As to the first element, "the threshold issue is always whether the plaintiff has a property or liberty interest protected by the Constitution."  *Vogelfang v. Capra*, 889 F. Supp. 2d 489, 510 (S.D.N.Y. 2012) (quoting *Perry v. McDonald*, 280 F.3d 159, 173 (2d Cir. 2001)).  In the context of prison disciplinary proceedings, an incarcerated individual's liberty interest is implicated only if the sentence "imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Washington v. Afify*, 681 F. App'x 43, 45 (2d Cir. 2017) (quoting *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004)).  That said, district courts in the Second Circuit have consistently held that "the loss of commissary privileges does not implicate any protected liberty interest under New York law."  *Ford v. Aramark*, 2020 WL 377882, at *9 (S.D.N.Y. Jan. 23, 2020); *see also Smart v. Goord*, 441 F. Supp. 2d 631, 640 (S.D.N.Y. 2006) ("[T]he loss of phone, package, and commissary privileges does not give rise to a protected liberty interest under New York law."); *Waters v. Prack*, 2017 WL 1239642, at *6 (N.D.N.Y. Feb. 24, 2017), *adopted by*, 2017 WL 1187871 (N.D.N.Y. Mar. 30, 2017) ("The final deprivation alleged by plaintiff to implicate a cognizable liberty or property interest concerns the loss of his telephone and

commissary privileges while in SHU confinement. Such privileges, however, do not constitute protected liberty or property interests.").

Here, Plaintiff alleges that, due to a false misbehavior report issued by C.O. York, Sergeant Mandel found Plaintiff guilty of violating his medically prescribed dietary restrictions during his Tier I disciplinary proceeding. (Compl. at 2–4.) As a result of being found guilty, Plaintiff alleges that he was sanctioned with the loss of 13 days of package and commissary privileges. (*Id*. at 4.) The loss of package and commissary privileges, however, does not implicate a protected liberty interest. *See Marcus*, 2022 WL 280935, at \*7 (dismissing incarcerated individual's procedural due process claims where alleging a "ninety days' loss of recreation, packages, commissary, and phone"); *Leevon v. Goord*, 2003 WL 22384787, at \*7 (W.D.N.Y. Sept. 4, 2003) (holding that an inmate's "ability to receive packages" is "a privilege . . . not a right"); *Jackson v. Annucci*, 2021 WL 2581340, at \*10 (S.D.N.Y. June 23, 2021) (holding that a "loss of commissary for ninety days" does not amount to the type of "atypical and significant hardship" that would implicate a protected liberty interest).

Plaintiff likewise cannot maintain a constitutional claim based solely on the allegedly false misbehavior report. An incarcerated individual "has no general constitutional right to be free from being falsely accused in a misbehavior report." *Castillo v. Snedeker*, 2024 WL 3346021, at \*2 (S.D.N.Y. July 8, 2024) (quoting *Boddie v. Schneider*, 105 F.3d 857, 862 (2d Cir. 1997)). To the contrary, "to maintain a cognizable claim against correction officers for filing a false misbehavior report, 'a plaintiff must be able to show either: (1) that he was disciplined without adequate [procedural] due process, as a result of the report; or (2) that the report was issued in retaliation for exercising a constitutionally protected right.'" *Louime v. Lamanna*, 2023 WL 1385180, at \*6 (S.D.N.Y. Jan. 31, 2023) (citing *Allen v. City of N.Y.*, 480 F. Supp. 2d 689, 721 (S.D.N.Y. 2007)).

As explained above, however, Plaintiff's sanction—the loss of package and commissary privileges—did not implicate a protected liberty interest. Nor do Plaintiff's allegations suggest that the misbehavior report was issued in retaliation for Plaintiff's exercise of a constitutionally protected right. Rather, Plaintiff alleges only that Defendants fabricated the report because they harbored animus toward him arising from his criminal conviction and related criminal appeals. (Compl. at 4.) The Complaint does not further expand on these allegations, nor does it assert a First Amendment retaliation claim. (*Id*.)

As a result, Plaintiff has not alleged the deprivation of a protected liberty interest. The Court need not consider whether the procedures employed during the Tier I disciplinary proceeding were otherwise constitutionally adequate. Plaintiff's Fourteenth Amendment procedural due process claims are therefore dismissed without prejudice.

## III.    Eighth Amendment

Turning to the Eighth Amendment claim, Plaintiff alleges that his 13-day loss of package and commissary privileges constituted cruel and unusual punishment. (Compl. at 5.) In turn, Defendants argue that the loss of such privileges does not implicate the Eighth Amendment. (Defs.' Mem. at 5–6.) Similar to Plaintiff's Fourteenth Amendment claims, his opposition papers do not appear to respond to Defendants' argument. (Pl. Opp. at 1.)

To state an Eighth Amendment claim, an incarcerated individual "must allege two elements, one subjective and one objective. First, the prisoner must allege that the defendant acted with a subjectively sufficiently culpable state of mind. Second, he must allege that the conduct was objectively harmful enough or sufficiently serious to reach constitutional dimensions." *Crawford v. Cuomo*, 796 F.3d 252, 256 (2d Cir. 2015) (internal citations and quotation marks omitted). Under this standard, the deprivation alleged by the incarcerated individual must be

14

objectively "sufficiently serious" such that the deprivation "den[ied] the minimal civilized measure of life's necessities." *Branham v. Meachum*, 77 F.3d 626, 630–31 (2d Cir. 1996) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (alteration in original)); *see also Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) ("[T]he inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health.").

As discussed above, Plaintiff alleges that he was sanctioned with the loss of 13 days of package and commissary privileges.  (Compl. at 4.)  Plaintiff alleges that such a sanction constituted cruel and unusual punishment.  (*Id.*)  These allegations, however, do not give rise to the inference that Plaintiff was "deprived of [his] basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety" or was "exposed to conditions that pose[d] an unreasonable risk of serious damage to [his] future health." *Santana v. Westchester Cnty. Dep't of Corr.*, 2026 WL 1480881, at *4 (S.D.N.Y. May 27, 2026) (quoting *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012)).  Indeed, district courts have consistently held that the loss of package and commissary privileges does not constitute cruel and unusual punishment under the Eighth Amendment. *See, e.g.*, *Marcus*, 2022 WL 280935, at *6 (dismissing Eighth Amendment claim where incarcerated individual alleged a loss of "recreation, packages, commissary, and phone privileges for ninety days"); *Abdur-Raheem v. Caffery*, 2015 WL 667528, at *4 (S.D.N.Y. Feb. 17, 2015) (dismissing Eighth Amendment claim premised on loss of packages for six months); *Roseboro v. Gillespie*, 791 F. Supp. 2d 353, 381 (S.D.N.Y. 2011) (concluding, on summary judgment, that loss of commissary privileges for ninety days does not constitute cruel and unusual punishment).

Plaintiff therefore fails to state an Eighth Amendment claim, and the Court dismisses Plaintiff's Eighth Amendment claims without prejudice.

IV.    **Leave to Amend**

15

Finally, the Court must determine whether Plaintiff should be granted leave to amend his pleadings. The Second Circuit has instructed that "a *pro se* plaintiff who is proceeding *in forma pauperis* should be afforded the same opportunity as a *pro se* fee-paid plaintiff to amend his complaint prior to its dismissal for failure to state a claim, unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (citation omitted); *see also Owens v. N.Y.C. Dep't of Sanitation*, 2013 WL 150245, at *3 (S.D.N.Y. Jan. 15, 2013) ("[A] court should grant leave to amend [to a *pro se* litigant] at least once before dismissing [a complaint] with prejudice"); *Breer v. Maranville*, 2012 WL 6597707, at *3 (D. Vt. Nov. 27, 2012) ("The Second Circuit has cautioned that district courts should not dismiss *pro se* complaints with prejudice without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.").

Here, Plaintiff has not been afforded the opportunity to amend his Complaint. Construing Plaintiff's allegations liberally, and mindful of Plaintiff's *pro se* status, the Court will permit Plaintiff another opportunity to replead any claims dismissed without prejudice in this Opinion & Order. Plaintiff is advised that any Amended Complaint will completely replace, rather than supplement, the initial Complaint. Any claims, facts, or attachments that Plaintiff wishes the Court to consider must be included in or attached to the Amended Complaint. Plaintiff is further advised to expand upon and provide further factual allegations concerning the alleged constitutional violations, in addition to plainly stating all claims he seeks to pursue against Defendants.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss the Complaint is GRANTED. Plaintiff's claims against Defendants in their official capacities are dismissed without prejudice

for lack of subject matter jurisdiction. Plaintiff's remaining claims against Commissioner Daniel F. Martuscello III are likewise dismissed without prejudice for lack of personal involvement. Plaintiff's Fourteenth and Eighth Amendment claims against the remaining Defendants are also dismissed without prejudice.

Because Plaintiff proceeds *pro se*, and in light of the Second Circuit's instruction that a *pro se* plaintiff should generally be afforded an opportunity to amend, Plaintiff is granted leave to file an Amended Complaint solely with respect to any claims dismissed without prejudice by this Opinion & Order. If Plaintiff chooses to do so, Plaintiff shall file an Amended Complaint by August 14, 2026. Defendants are then directed to answer or otherwise respond by September 8, 2026. If Plaintiff fails to file an Amended Complaint within the time allowed, and cannot show good cause to excuse such failure, the claims dismissed without prejudice by this Opinion & Order will be deemed dismissed with prejudice, and the Clerk of Court will be directed to close this case.

The Court respectfully directs the Clerk of Court to (1) terminate the Motion at ECF No. 42; and (2) mail a copy of this Opinion & Order to *pro se* Plaintiff at the address listed on the docket and note service on the docket.

SO ORDERED.

Dated: June 26, 2026
       White Plains, NY

_____
Nelson S. Román, U.S.D.J.

17